Ms. Jane Roe, a pseudonym, *pro se*
Mailing Address:
5301 Westbard Circle #407
Bethesda, MD 20816

USDC - GREENBELT
'22 JAN 14 AM 11:57

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| Ms. JANE ROE, a pseudonym | ) | **PX22CV0110** |
| | ) | Civil No._____ |
| Plaintiff | ) | (To be filled in by Court) |
| v. | ) | |
| | ) | |
| HON. BRIAN FROSH, | ) | |
| In his official capacity as | ) | |
| Attorney General of Maryland | ) | |
| 200 St. Paul Place | ) | |
| Baltimore, MD 21202 | ) | |
| | ) | |
| HON. JOSEPH GRIFFIN, | ) | |
| In his official capacity as Register | ) | |
| of Wills for Montgomery County | ) | |
| 50 Maryland Avenue | ) | |
| North Tower 3220 | ) | |
| Rockville, Maryland 20850 | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**COMPLAINT**

Plaintiff, Ms. Jane Roe ("Plaintiff" or "Ms. Roe"), a pseudonym, *pro se*, asserts two

distinct types of non-class based, or class-of-one, Equal Protection claims under §1983, (1)

*LeClair*, and (2) *Olech*; (3) §1981 & §1983 claims regarding contracts; (4) §1982 & §1983

claims regarding inheritance; and, (5) a §1983 due process claim regarding fabrication of

evidence.  Plaintiff seeks compensatory, special, and punitive damages, costs of litigation,

declaratory and injunctive relief, and in support thereof alleges:

## INTRODUCTION

1. Decedent loved Plaintiff as a daughter, even though she was his daughter-in-law.
   Decedent was diagnosed with life-ending cancer while in India and contacted Plaintiff to
   arrange for his return to the United States.  Decedent wanted to be with Plaintiff during
   his end-of-life.

2. Plaintiff took all steps to satisfy Decedent's wishes and immediately arranged for his
   return to the United States.  Plaintiff looked after Decedent in hospital daily until his
   passing.  Decedent had previously executed a healthcare power-of-attorney, a.k.a. living
   will, and attorney-in-fact power-of-attorney in favor of Plaintiff.  Decedent had also
   previously executed a valid-Will designating Plaintiff as his Estate's Executor and Sole-
   Legatee.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 42 U.S.C. §§1981, 1982, 1983,
   and 1988; 28 U.S.C. §1343(a)(3) and (4); and, 28 U.S.C. §1331.

4. Furthermore, this Court has jurisdiction over Plaintiff's request for declaratory relief
   pursuant to 28 U.S.C. §§2201 and 2202.  Jurisdiction over Plaintiff's claim for litigation
   costs is based on 42 U.S.C. §1988.

5. Venue is proper under 28 U.S.C. §1391.

PLAINTIFF

6. Plaintiff is an individual *U.S. Citizen* and resident of Montgomery County, Maryland.

DEFENDANTS

7. Defendant Honorable Brian Frosh is sued in his official capacity as Attorney General for the State of Maryland ("Mr. Frosh"). Defendant Mr. Frosh is chief legal officer of the State of Maryland and is responsible for the laws and legal procedures within the State.

8. Defendant Honorable Joseph Griffin is sued in his official capacity as Register of Wills for Montgomery County, Maryland ("Mr. Griffin" or "ROW"). Defendant Mr. Griffin is responsible for overseeing the proper, lawful, and timely administration of all estates within Montgomery County.

FACTS

**ROW's Selected History of Appointments:**

9. "Lynn C. Pendleton," former wife of Montgomery County Circuit Court Judge David Boynton, divorced him in ~2006; remarried in ~2007 to Lawrence B. Pendleton and legally changed her name to "Lynn C. Pendleton" on her Md. driver's license and U.S. passport.

10. Since 2007, Lynn C. Pendleton has used and continues to use many names, and ROW continues to appoint her under many different names, knowing that these are fictitious names. For example, though by no means exhaustive:

|  | Personal Reps: | **LYNN BOYNTON PENDLETON** [316 E. |
| In W-97708, | Attorney: | **LYNN CAUDLE BOYNTON** [316 E. DIAN |

|  | Personal Reps: | **LYNN BOYNTON** [316 DIAM |
| In W-93185, | Attorney: | |

Personal Reps:   **LYNN C BOYTON PENDLETON [**316 EAST DIAI
20877**]**

In W-95454,   Attorney:

Personal Reps:   **LYNN CAUDLE BOYNTON PENDLETON [**316 EAST
GAITHERSBURG, MD 20877**]**

In W-94194,   Attorney:

Personal Reps:   **LYNN CAUDLE BOYNTON PENDLETON** [316 E.
MD 20877]

In W-90781,   Attorney:   **LYNN CAUDLE BOYNTON** [316 E. DIAMOND AVE.

Personal Reps:   **LYNN CAUDLE BOYNTON PENDLETON** [316 EAST DIAI
GAITHERSBURG, MD 20877**]**

In W-74534,   Attorney:

Personal Reps:   **LYNN CAUDLE BOYNTON [**316 EAST

In W-97928,   Attorney:

In W-87973,   Personal Reps:   **LYNN BOYNTON ESQ [**316 EAST DIAMOND AVE,

In 468152V (MC),

Defendant

Name: **BOYNTON, LYNN CAUDLE**
Address: **PERSONAL REPRESENTATIVE OF THE**
**ESTATE OF AMELIA A. BOYD**
City:   **GAITHERSBURG** State: **MD** Zip Code: **20877**

In 24C11001784 (Balt. City),

Party Type: **Defendant** Party No.: **6**
Name: **Boynton, Lynn Caudle**
Address: **Address Unknown**

11. As each example demonstrates, ROW knows that these different fictitious names belong
to the same person operating out of the same address ("316 East Diamond…").

12. However, when the State demanded unpaid taxes, it smartly and correctly named and
sued a legal and real person, rather than a fictional character in *State v. Pendleton*,
394487V (MC):

Defendant

Name: **PENDLETON, LYNN C**
Address: **15113 ROSECROFT RD**
City:     **ROCKVILLE**  State: **MD**  Zip Code: **20853-1862**

13. It's undeniable that when Defendants "appoint" an agent under many different names they are feigning ignorance; because, when unpaid taxes are demanded, they ***know*** to use her "real" name.

14. On **February 18, 2020**, Lynn C. Pendleton finally confessed to Plaintiff that her real and legal name, since 2007, is Lynn C. Pendleton.

**Two Types of Estates:**

15. There are two types of estates in Maryland, testate and intestate.

16. An intestate estate is commonly known as a "default will." It is a statutorily created distribution plan for a decedent that passes away without a will.

17. If a decedent executes a will, then that is a testate estate. In a testate estate, "the duty to ascertain and effectuate a testator's intention is virtually ironclad." *Friedman v. Hannan*, 412 Md. 328, 340 (2010).

18. To be sure, a disinherited person in a testate estate, an otherwise intestate heir,[1] who would have been an heir under the State's intestacy plan, does have one opportunity to "caveat" a will on limited grounds and it must be timely filed with ROW.

19. If caveat prevails, then testate estate is converted into intestate estate, because will has been invalidated for some lawful reason. If caveat doesn't prevail, then former-caveator has no standing in testate estate and will stands.

---

[1] ET §1-101(h) defines an heir as "a person entitled to property of an ***intestate*** decedent[.]"

**Decedent and Testator:**

20. Decedent and Testator passed away in Montgomery County on June 18, 2016.

21. Decedent's Last Will was filed with Defendant ROW shortly thereafter.

22. Per terms of Decedent's Will, all of his earthly property was left to his designated sole-legatee, Plaintiff Ms. Jane Roe.

23. On 9/9/2016, a disinherited person, Tina, had her caveat hearing.  Her caveat failed and Decedent's Will stands post-9/9/16, or has always stood, with one sole-legatee in a testate estate.

24. Decedent's wife predeceased him; accordingly, Decedent passed away single or unmarried.

**Legatee:**

25. ET §1-101(m)(1) defines "legatee" as "a person who under the terms of a will would receive a legacy."  In turn, a "legacy," ET §1-101(lower-case "L"), "means any property disposed of by will[.]"

26. Naturally, a legatee who receives a legacy is an "interested person," ET §1-101(i), and has standing in all estate proceedings to administer decedent's testate estate.

27. A sole-legatee is also sole equitable title holder of all estate property.

28. Decedent's Will designated Plaintiff Ms. Roe as sole-legatee.

29. Defendant ROW and/or his agent misrepresented that "Neela" is legatee.

30. Defendant ROW and/or his agent misrepresented that Decedent's son is legatee.

31. Defendant ROW and/or his agent misrepresented that Plaintiff receives nothing under the terms of Decedent's Will and therefore lacks standing.

32. On or about **11/10/2021**, Defendants and/or their agents ejected Plaintiff from Decedent's estate because she receives nothing under the terms of Decedent's Will.

### ROW "Appoints" a Fictional "Fiduciary:"

33. Approx. 9/26/2016, ROW *appointed* "Lynn Caudle Boynton," a fictitious person, as "Special Administrator," and to act as fiduciary in Decedent's Estate, which has one legatee.

34. It is believed that contemporaneous with her "appointment" by ROW, she hired a private attorney, James Debelius.[2]

35. A fictional person cannot hire a lawyer, nor can a lawyer represent a fictional person without first obtaining a court order to proceed under a pseudonym, after demonstrating some harm by revealing identity. *See, Doe v. Shady Grove Hosp.*, 89 Md.App. 351 (1991) (must obtain court order to use pseudonym after showing harm, e.g., AIDS).

36. ROW and/or his agent never obtained a court order to use a pseudonym nor does she use her real legal name in official documents and proceedings.

37. Approx. on **11/15/2019**, ROW's agent disclosed her alleged billing records.

38. Said billing records indicated that at least on one occasion, after being retained by ROW's agent, her "attorney" had an *ex parte* "TC [telephone conference]" with circuit court "Judge Debelius" regarding Decedent's Estate.

39. The two persons on that *ex parte* telephone conference are blood brothers.

40. At no time did ROW's agent disclose the contents or nature of that or any other *ex parte* communications with state judges.

---

[2] *United States v. Debelius*, 63001F (MC) (unpaid federal taxes).

41. On 8/13/2021, ROW's agent stated: "there'll be another motion to vacate next year after [defendants] see another bill that's been generated by one of the [joint defense] attorneys and something is stated in a bill that, if you twist, could be inserted into an argument, oh, now you have to vacate the judgment because Mr. [Robert] Grant made a phone call on such and such a date to someone who might have been a judge."

42. ROW, in or around 2018, in W-94656, appointed a circuit court employee as a personal representative based on misrepresentations and falsehoods in the petition seeking appointment and ***knowing*** that such appointment violates statutory guidelines.

43. ROW is not governed by any ethical standards of conduct beyond his oath of office.

44. ROW's agent is an alleged fiduciary, charged with the duty of defending Decedent's Will and Plaintiff's interests.  ROW and/or his agent cannot become a party to any device to collusively avoid, defeat, or change to effect a different disposition than stated by Testator's Will.

45. ROW and/or his agent must "defend and maintain validity of" Will without become a party "to any shift or device whereby Will is collusively avoided," defeated "or changed to effect a different disposition[.]" *Surratt v. Knight*, 162 Md. 14, 16 (1932).

### False Assertions of "Incest:"

46. ROW's agent, on or about **08/24/2018**, submitted a proposed order to ROW depicting an incestuous relationship between Decedent and his former daughter-in-law, Plaintiff Ms. Roe.

47. ROW's agent falsely wrote in the proposed order that "the court does not need to address ***again*** the unmeritorious contention that [Ms. Roe] is the true surviving spouse."

48. ROW's agent falsely wrote that Plaintiff Ms. Roe has ***repeatedly*** contended that she is the "true surviving spouse" of Decedent, her former father-in-law.

49. ROW and/or his agent knew this was a false statement, but proceeded against Plaintiff Ms. Roe to intentionally discriminate solely because of her race, ancestry or ethnic characteristics.

50. ROW and/or his agent submitted a false proposed order for the sole purpose of causing great harm to the emotional well-being of their intended target, Plaintiff Ms. Roe, and to subject her to intentional discrimination solely because of her race, ancestry or ethnic characteristics.

51. ROW and/or his agent, on **1/11/2022**, repeated and published again false accusations of "incestuous sexual relationship with her former father-in-law[.]"

52. ROW and/or his agent, also has repeatedly referred to Plaintiff, sole-legatee, as "a bit player" in an Estate where Plaintiff is sole equitable title holder of all Estate funds.

53. It is elementary that falsely accusing anyone of incest will cause great emotional and reputational harm.  People in the community will tend to believe such falsities originating from ROW and/or his agent.

54. ROW and/or his agent were clearly motivated by something other than ethics, morality, decency, the rule of law, fairness, or any principle enshrined in the Constitution; rather, ROW and/or his agent were motivated by an invidious prejudice based solely on Plaintiff Ms. Roe's race, ancestry or ethnic characteristics.

**False Assertions that Decedent was "Married:"**

55. ROW's agent, on or about **08/24/2018**, submitted a proposed order to ROW declaring that Decedent was validly married prior to passing away to "Neela," who was also falsely misrepresented as a "legatee" per the terms of Decedent's Will.

56. ROW and/or his agent "took" approx. $100,000 from Decedent's Estate corpus, of which Plaintiff is sole equitable title holder, and paid "Neela's" state and federal tax liabilities by fraudulently filing "joint" state and federal tax returns.

57. ROW and/or his agent know and knew that Decedent's Will designated Plaintiff as sole-legatee.

58. ROW and/or his agent know and knew that Decedent was unmarried at the time of his passing away.

59. ROW and/or his agent know and knew that "Neela" was Decedent's housemaid and approx. 35 years younger than Decedent.

60. ROW and/or his agent know and knew that "Neela" is and was validly married to someone else and therefore could not have married another person under the laws of India and Maryland.

61. Defendants and ROW's agent know and knew that these false assertions were investigated by the United States Department of Homeland Security. *See*, Homeland Security Report at 2, Bullet 2:

> petitioner's first wife passed away in November 2011 according to Social Security Administration records. The beneficiary is supposed to have divorced her ex-husband in March 2011 and has a 13-year old son from her first marriage. She did not obtain a decree that legitimized the divorce from her previous husband under Indian law until September 2012. By that time, the petitioner and beneficiary had already married each other, as they had their wedding ceremony in April 2012. Their marriage is therefore no legal as the beneficiary was still married to her ex-husband at

62. Knowing the Homeland Security finding of a bigamous and invalid marriage by "Neela," Defendants and ROW's agent nonetheless continue to falsely assert that "Neela" is Decedent's surviving spouse, pay her tax liabilities, and falsely assert that she is also a "legatee."

63. Bigamy is illegal in India.

64. Bigamy is illegal in the United States and Maryland.

65. Neither Defendants nor their agent have articulated any basis for overcoming DHS's "strong presumption" of correctness. *Sanders v. USPS*, 801 F.2d 1328, 1331 (Fed.Cir.1986) ("It takes well-nigh irrefragable proof to overcome presumption.").

66. Defendants are promoting incest and bigamy.

### False Assertions of a "Redistribution Agreement:"

67. It is beyond question that after Decedent passes away, his Will cannot be rewritten or modified.

68. There is a very limited exception, in testate estates, where there are two or more legatees. All legatees can enter into a "redistribution agreement" by and among themselves to alter Decedent's testamentary intentions.  For example, if legatee #1 is bequeathed a car, and legatee #2 is bequeathed a motorcycle, then #1 & #2 can enter into a "redistribution agreement" by and among all legatees to "redistribute" motorcycle to legatee #1 and car to legatee #2.

69. However, under no circumstance can a challenger to a Will or claimant against an estate enter into a "redistribution agreement" with a legatee.

70. Nor can ROW's agent, a fiduciary, become a party to redistribute a decedent's estate, with a "redistribution agreement" with challengers to will and claimants against an estate.

71. *Brewer v. Brewer*, 386 Md. 183, 194 (2005), permitted redistribution agreements based on "the ability of competent [legatees] to reach an agreement to distribute an Estate in a manner different from that set forth in Will." *Brewer* specifically cautioned that redistribution there was among all Will legatees and "not a case, then, of [administrator] compromising or settling a claim made against the Estate." *Id.* at 192. Assuming by and among only legatees, and does not include challengers to estate, a "redistribution agreement" must also "comply with requirements of basic contract law[.]" *Id.* at 196-97.

72. ROW and/or his agent, in concert with disinherited person that lost caveat on 9/9/16, and Decedent's former housemaid, misrepresented that she had negotiated a "redistribution agreement" with sole-legatee, Plaintiff, to redistribute her ***entire*** bequest to challengers and claimants.

73. ROW and/or his agent settled a caveat with a disinherited person, who ROW and/or his agent know and knew failed to prevail on her caveat on 9/9/16, and therefore had no standing in Estate post-9/9/16.

74. ROW and/or his agent settled a claim from housemaid that falsely claimed to be validly married to Decedent, after ROW and/or his agent had possession of Homeland Security Report.

75. Plaintiff Ms. Roe objected and resisted on various grounds, to include that there was no binding valid contract.

76. ROW and/or his agent never disclosed *Brewer*, as they were ethically obligated to do.

77. ROW's agent's "attorney" testified in violation of Rule 19-303.7(a).

78. ROW's agent's attorney falsely testified – believed to have perjured himself.

79. ROW's agent falsely represented that a disinherited person, an intestate heir, after failing to prevail on her caveat on 9/9/16, still had standing.

80. ROW and/or his agent falsely represented that the housemaid was validly married to Decedent.

81. After vehement and false arguments from ROW's agent and other challengers to Decedent's Will, an alleged "redistribution agreement" was finally approved on **4/23/19**.

**No Consideration for "Redistribution Agreement:"**

82. Generally, forbearance from exercising a right or asserting a good faith claim is valid consideration to support an agreement.  The forbearing party must have had an honest intention to prosecute the claim.  An abandoned claim must not be frivolous, vexatious, or unlawful.  *Fiege v. Boehm*, 210 Md. 352, 361 (1956).

83. ROW and/or his agent settled a "caveat" after caveat failed on 9/9/16; and, settled a "spousal election" by a housemaid.  These are frivolous, vexatious, and unlawful claims.

84. Forbearance of a groundless claim lacking legal justification is not valid consideration. *Hoffman v. Seth*, 207 Md. 234, 241 (1955).

85. ROW and/or his agent settled a failed caveat and a "spousal" claim from a housemaid by taking Plaintiff Ms. Roe's ***entire*** bequest/inheritance and "redistributing" to non-legatees and challengers.

**Executory Contract:**

86. Even assuming a valid *Brewer* agreement, the alleged contract was wholly executory -- a contract that has not as yet been fully completed or performed; or, a contract the obligation (performance) of which relates to the future.

87. Row and/or his agent's alleged 2-page executory contract explicitly states condition that 100% of Duke Power stocks must be conveyed by disinherited person (Tina) to the Estate within 10-days of approval – i.e., condition precedent.

88. Final approval was obtained on **4/23/2019. Plus 10-days equals May 2, 2019**. Past midnight and into May 3, 2019, executory contract failed, as a matter of law, assuming *Brewer* test was satisfied.

89. ROW's agent admitted that 100% of stocks were ***not*** conveyed, i.e., transfer of ownership to Estate within 10-days, or ever.

90. Condition failed on 5/2/19; and, with it, executory contract failed, as a matter of law, on the morning of May 3, 2019.

91. ***On the morning of May 3, 2019, ROW and/or his agent should have returned Plaintiff's entire inheritance.***

92. ROW and/or his agent failed to disclose failure of condition and failure of executory contract.

93. ROW and/or his agent unethically and falsely attempted to cover-up the failure, by pretending to execute a failed contract.

94. ROW and/or his agent continued, unethically and against clear legal precedent, to advocate for and enforce a failed executory contract past May 2, 2019.

95. When condition is unsatisfied, the corresponding contractual duty of party whose performance was conditioned on it does not arise.

96. Having failed to perform, ROW and/or his agent were not in a position to hold Plaintiff Ms. Roe to the terms of alleged contract.

97. Where a contractual duty is subject to a condition precedent, whether express or implied, *there is no duty of performance and there can be no breach by nonperformance.*

98. An express condition "must be exactly fulfilled or no liability can arise on the promise which such condition qualify." *Della Ratta v. Am.Better*, 38 Md.App. 119, 133 (1977).

99. Since contract was wholly executory, no forfeiture was involved. Full compliance with express condition was necessary to execute.

100. ROW and/or his agent knew and know that Plaintiff Ms. Roe never signed (executed) a waiver of condition.

101. A waiver of contractual provision must be clearly established and cannot be inferred from equivocal acts or language.

102. Waiver of contractual requirement must be an intentional relinquishment of rights. A meeting of minds is required not only to make a contract, but also to abrogate or modify it after it has been made.

103. No such agreement could have been reached without some manifestation on the part of Plaintiff Ms. Roe. *Myers v. Kayhoe*, 391 Md. 188, 206 (2006) ("no such agreement could have been reached without some manifestation on the part of appellants to appellees").

104. In an estate context, Rule 6-126 commands a standardized <u>signed and filed waiver form</u> with ROW ("may waive […] or consent to any matter." *Id.*).

105. ROW and/or his agent knew and know since May 2, 2019 that Plaintiff has not waived condition's exact performance requirement.

106. ROW and/or his agent have never sought or obtained a waiver from Plaintiff.

107.    ROW and/or his agent knew and know that on May 3, 2019, assuming a valid *Brewer* "redistribution agreement," Plaintiff Ms. Roe's entire inheritance was to be released to her.

108.    It is elementary that no court can rewrite a contract. Courts must "enforce the terms of unambiguous written contracts without regard to the consequences of that enforcement." *Calomiris v. Woods*, 353 Md. 425, 445 (1999). Put differently, "it is improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous, simply to avoid hardships." *Canaras v. Lift Truck*, 272 Md. 337, 350 (1974).

109.    ROW and/or his agent, rather than release Plaintiff Ms. Roe's entire inheritance to her, instead stripped Plaintiff's "standing" in the Estate to subvert her bequest/inheritance by falsely claiming Plaintiff receives nothing under the terms of Decedent's Will.

110.    ROW and/or his agent stated that Plaintiff Ms. Roe is creating "procedural mayhem" by demanding her inheritance and sought to designate Plaintiff Ms. Roe a "vexatious" litigant and sought to bar her from accessing any state court for redress.

**Sole-Legatee Lacks "Standing:"**

111.    ROW and/or his agent obtained final approval, on **11/10/2021**, stripping Plaintiff Ms. Roe of standing in an Estate wherein she is sole-legatee and sole equitable title holder.

112.    After 5/2/19, when condition and alleged contract failed as a matter of law, ROW and/or his agent then sought to end Plaintiff Ms. Roe's demands for her inheritance by arguing that Plaintiff lacks standing because she gets nothing under the terms of Decedent's Will.

113.    ROW and/or his agent falsely asserted previously that "Neela," a housemaid, is "legatee."

114.    ROW and/or his agent falsely asserted that Decedent's son is a "legatee."

115.    Defendants and ROW's agent know that Plaintiff Ms. Roe is not only a legatee, but sole-legatee under the terms of Decedent's Will.

116.    Defendants and ROW's agent know that "Neela" is not a "legatee."

117.    Defendants and ROW's agent know that Decedent's son is not a "legatee."

118.    Plaintiff Ms. Roe is an "interested person" as defined by ET §1-101(i).  Because Plaintiff is "(1) [a] person named as executor in a will" and/or "(3) [a] legatee in being, not fully paid, whether his interest is vested or contingent."

119.    ROW and his agent know that being a legatee or being nominated in the Will as executor confers standing in a testate estate.

120.    ROW and his agent know that on 5/2/2019 the alleged *Brewer* "redistribution agreement" failed, as a matter of law.

121.    ROW and his agent know that Plaintiff Ms. Roe has standing in the Estate.

122.    Defendants and ROW's agent know that they are illegally withholding all estate funds to which Plaintiff Ms. Roe holds equitable title.

123.    Defendants and ROW's agent are acting illegally, because *Brewer*, as a matter of law, prevented a "redistribution agreement" under these circumstances; and, as a matter of law, even assuming a valid *Brewer* agreement, condition failed and with it executory contract failed.

124.    There is nothing further for Plaintiff to challenge; Plaintiff's inheritance must be released to her; for she alone holds equitable title to the entirety of Decedent's Estate corpus.

**Defendants on an Unjust Path:**

125.    Defendants must distribute all estate funds per the terms of Decedent's Will.

126.    Decedent's Will has not been rewritten, caveat didn't prevail, nor can a 2-page alleged "redistribution agreement" be incorporated into the Will.

127.    It is beyond question that a decedent's will cannot be rewritten. *Shriners Hospitals v. Md. Nat'l Bk.*, 270 Md. 564, 573-74 (1973) ("It is clear beyond question that […] a court of equity has no power to rewrite or amend a decedent's will."  However, "there is a vast difference between the transposition, addition or changing of a word or two in order to carry out the overriding general intent of the testator and incorporating in his will an 8-page document such as is proposed in the instant case.").

128.    Defendants and ROW's agent know that Decedent's Will stands, since at least 9/9/16.

129.    Defendants and ROW's agent have sought to thwart Decedent's testamentary intentions by redirecting Decedent's bequest to others not in the Will.

130.    ROW and/or his agent have vehemently advocated for a housemaid by falsely asserting that she is Decedent's lawful wife and "legatee."

131.    ROW and/or his agent have vehemently advocated for a disinherited person, knowing that caveat failed on 9/9/16, but nonetheless continued to misrepresent that caveator has claims and standing post-9/9/16.

132.     ROW and/or his agent have acted unethically and unlawfully from inception for the sole purpose of redirecting Decedent's bequest from Plaintiff to others, including ROW's agent.

133.     ROW's agent has asserted that she is entitled to almost half-million dollars for her advocacy of a housemaid; a disinherited person that didn't prevail on caveat; for *Brewer* violation; for ethics violations; for perjury; for corruption; for false statements; for her efforts to cover-up failure of condition and contract; and, for her failure to honor Decedent's testamentary intentions.

134.     ROW and/or his agent are in possession of approximately over $1.5 million, to which Plaintiff is sole-legatee and sole equitable title holder.

135.     ROW and/or his agent vehemently refuse to disclose any bank statements, or any type of accounting that documents the whereabouts of funds or of its existence, *vel non*.

136.     Plaintiff believes that ROW and/or his agent have misappropriated all estate funds.

137.     Plaintiff believes that Defendants intentionally appoint fake-agents to misappropriate estate funds.

138.     ROW has appointed an individual operating out "316 E. Diamond Ave" with many different names for the sole purpose of seizing and then misappropriating estate funds.

139.     ROW and/or his agent's efforts to feign a "redistribution agreement" failed on 5/2/2019, when condition failed.

140.　　　Defendants are on a path of injustice because they must place in the Estate record a valid redistribution agreement to justify why distribution was not made to Plaintiff Ms. Roe.

141.　　　A valid "redistribution agreement [must] be placed in the record[.]" *Brewer*, at 195. A fiduciary has a duty to settle the estate in accordance with the terms of Will. *Id.* The function of administrative accounts is to document that the estate has been properly administered. *Id.* Those accounts must be audited before any distributions. *Id.*

142.　　　If distributions are inconsistent with the Will and there is no valid redistribution agreement to explain the inconsistency, ROW cannot approve the accounts. *Id.* at 196. "Anyone examining the record, bereft of [a valid] redistribution agreement, would have to conclude that the account is incorrect and should not be approved, as there would be nothing to explain ***why property left by the Will to X is being distributed to Y***." *Id.*

143.　　　ROW can't answer the basic question why property left by the Will to Plaintiff Ms. Roe is being distributed to Y? *Brewer* prevented an agreement by and among non-legatees, condition failed, and no proof of express waiver in record. Without a valid *Brewer* agreement, followed to the letter, no distributions can be made that are inconsistent with Decedent's Will.

144.　　　ROW and/or his agent have already made unlawful distributions from Estate funds; e.g., the bigamous and fake-wife was paid $10,000.00 from estate funds.

145.　　　ROW's agent, on or about **01/24/2020**, after as a matter of law, the alleged executory contract failed on 5/2/19, stated that no "financial records regarding the Estate" will be provided to Plaintiff Ms. Roe.

146.　　　ROW has kept the entire estate corpus shielded from sunlight.

**Some General Notes to Counts I thru V:**

147.     Statute of limitations for §1981 is 4-years.  28 U.S.C. §1658; *Jones v. R.R.*

*Donnelley & Sons Co.*, 541 U.S. 369 (2004).

148.     The patently false "incest" allegation was made and published on approx. 8/24/18,

and/or repeated again on 1/11/22.  This discriminatory act, which falls within the 4-year

statutory period, has the "effect of [] sweep[ing] within the limitations period the earlier

alleged acts of discrimination." *Bradley v. Carydale Enterprises*, 707 F.Supp. 217, 222

(E.D.Va.1989).

149.     Purposeful discrimination that violates the Equal Protection Clause will also

violate §1981.  *Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003).

150.     Plaintiff's burden is of pleading, not of proof at this stage.  *Neilson v. D'Angelis*,

409 F.3d 100, 104 (2d Cir. 2005).

151.     But for Defendants unlawful conduct, the alleged injury would not have occurred.

Also, supportive of the "continuing violations" rule is the well-settled presumption that

§§1981 and 1982 should be construed broadly in view of their ambitious goal of

eliminating racial discrimination.  *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982);

*see also, Bradley*, at 221-22.

## Count I:  42 U.S.C. §§1981 & 1983:

(a) Statement of equal rights

All persons within the jurisdiction of the United States **shall have the same right** in every State and Territory **to make and enforce contracts**, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the **making, performance, modification, and termination** of contracts, and the enjoyment of all benefits, privileges, **terms, and conditions** of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

152.        Plaintiff incorporates by reference all allegations set forth within the 4-corners of

this Complaint, regardless of whether above or below Count I.

153.        The alleged contracting parties never formed a valid *Brewer* "redistribution

agreement."

154.        There was no valid or lawful consideration.

155.        Plaintiff, as sole-legatee, cannot enter into an agreement to give away her entire

inheritance to challengers and disinherited persons in violation of *Brewer*.

156.        ROW and/or his agent never disclosed *Brewer*.

157.        ROW and/or his agent never disclosed, post contract formation, failure of

condition and the contemporaneous failure of executory contract.

158.        Past **5/2/2019**, there was no obligation on the part of Plaintiff to perform under the

terms of a failed executory contract.

159.    ROW and/or his agent failed to protect Decedent's Will and Plaintiff's interests thereunder, during the pre-contract formation, formation, and post-contract formation phases.

160.    Plaintiff never expressly assented to or signed a written waiver of executory contractual terms.

161.    Plaintiff never expressly assented to or signed a written modification of executory contract.

162.    The alleged "redistribution agreement" was unenforceable and not binding on Plaintiff.

163.    Plaintiff was deprived of a right which, under similar circumstances, would have been accorded to a person of a different race, ancestry or ethnic characteristics.[3]

164.    Plaintiff is constantly and repeatedly portrayed as illiterate, uneducated, incestuous, a bit player, and is perceived as someone who can easily be cheated out of her entire inheritance under a pretense of an imaginary contract perpetually being modified unilaterally by Defendants and their agent.

165.    Plaintiff is a protected individual; Defendants discriminated against her on the basis of race, ancestry or ethnic characteristics; and, that discrimination implicates one or more of the activities listed in the statute.

166.    Plaintiff sought to "make and enforce contracts" to enjoy all benefits and privileges from strictly enforcing all terms, conditions, demanding full, complete, and

---

[3] The Court expanded the concept of race announced in *Saint Francis College v. Al-Khazraji*, 481 U.S. 604 (1987) in *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615 (1987). *Saint Francis* applies to both §§1981 and 1982.

timely performance, demanding no unilateral modifications, and demanding prompt

termination upon failure.

167.    Plaintiff was denied her right to enjoy all benefits, privileges, terms, and

conditions of a contractual relationship.

168.    There is a causal nexus between the harm suffered and Plaintiff's membership in

a protected class.

169.    But for Defendants unlawful conduct, Plaintiff was mistreated because of her

race, ancestry, or ethnic characteristics, and that treatment resulted in Plaintiff suffering

harm that would not have otherwise occurred.

**Count II:  42 U.S.C. §§1982 & 1983:**

"All *citizens* of the United States shall have the *same right*, in every State and
Territory, as is enjoyed by white citizens thereof to *inherit*, purchase, lease, sell,
*hold*, and convey *real and personal property*."

170.    Plaintiff incorporates by reference all allegations set forth within the 4-corners of

this Complaint, regardless of whether above or below Count II.

171.    Plaintiff is a Citizen of the United States.

172.    Plaintiff's ancestry or ethnic characteristics are within the protections of the 1866

legislation.

173.    Plaintiff alleges (a) Defendants racial animus, (b) intentional discrimination, (c)

and, deprivation of Plaintiff's property rights was based on race, ancestry or ethnic

characteristics.

174.    A testamentary bequest to Plaintiff is a mere "illusory bequest" unless the

Reconstruction Congress could insure that a bequest to Ms. Roe will be the same thing as

a bequest to a white citizen of 1866.

175.     Defendants' selectiveness in enforcing testamentary intentions for all Marylanders but not for Plaintiff is motivated by racial animus.

176.     There is no documented case of a testamentary bequest denied in Maryland other than to Plaintiff.

177.     Defendants' pretext of an alleged "redistribution agreement" that violates *Brewer* and whose condition nonetheless failed, rendered the alleged executory contract failed as of 5/2/2019.

178.     Immediately after Defendant ROW appointed his agent, Plaintiff's entire inheritance has been denied, even before the pretext of a *Brewer* "redistribution agreement."

179.     ROW's agent drafted and submitted a proposed order to ROW falsely depicting grotesque incestuous relations between Testator and his legatee solely motivated by racial animus to threaten, harass, intimidate, and scare Plaintiff away from demanding her property.

180.     ROW and/or his agent continue to argue one pretext after another.

181.     ROW and/or his agent dealt a final blow to Plaintiff by "taking her out" on November 10, 2021, because Plaintiff gets nothing after condition and contract failed.

182.     ROW and/or his agent grew tired of Plaintiff demanding her rightful bequest and inheritance under the terms of Decedent's Will.

183.     ROW's agent and Defendants are proceeding on a path of executing an imaginary "redistribution agreement," in violation of *Brewer*, and after condition failed, which renders the executory contract failed – as a matter of law.

184.    Defendants and ROW's agent have made it absolutely clear that they will NOT

abide by Decedent's Will, ***obviously***.

185.    Plaintiff's bequest is estimated at approximately over $1.5 million.

186.    Defendants refuse to provide any bank statements documenting its value, location,

or even its existence.

187.    Because of Defendants racial animus, Plaintiff has been denied her lawful

bequest/inheritance/property as commanded by Decedent/Testator, the laws of Maryland,

and §1982.

188.    But for Defendants unlawful conduct, Plaintiff was mistreated because of her

race, ancestry, or ethnic characteristics, and that treatment resulted in Plaintiff suffering

harm that would not have otherwise occurred.

### Counts III (*LeClair*) & IV (*Olech*):  42 U.S.C. §1983:

189.    Plaintiff asserts two distinct and separate non-class based, or class-of-one, Equal

Protection claims due to selective enforcement of the law:  ***LeClair*** and ***Olech.***[4]

The Equal Protection Clause directs that "all persons similarly circumstanced
shall be treated alike." *F.S. Royster Guano v. Virginia*, 253 U. S. 412, 415
(1920).

---

[4]  The first — under the theory of *LeClair v. Saunders*, 627 F.2d 606 (2d Cir.1980) — alleges
differential treatment on the basis of racial and/or personal animus.

   The Fourth Circuit appears to have adopted *LeClair*. *See, Jetstream Aero Services v.
New Hanover County*, No. 88-1748, 1989 WL 100644, at *1 (4th Cir. 8/15/1989).  That
standard contains two elements:  "***First***, plaintiff must establish that defendant[] treated
[her] differently in applying the laws than it treated other similarly situated entities.
***Second***, plaintiff must prove that defendant[] intentionally or purposefully discriminated
against [her] in selectively enforcing the laws." *Houck & Sons v. Transylvania County*,
852 F. Supp. 442, 452 (W.D.N.C. 1993).

   The second, adopts the theory of *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000),
alleging that the distinction between plaintiff's case and those similarly situated is so arbitrary
and irrational that it fails to pass even the "minimal" equal protection standard.

## Count III: *LeClair*

190.     Plaintiff incorporates by reference all allegations set forth within the 4-corners of this Complaint, regardless of whether above or below Count III.

191.     Plaintiff has been differentially treated, due to racial bias and/or personal malice, under similar conditions, within the same State, under the same laws.

192.     Within a 6-month window permitting a challenge to a Will, a caveat was filed, but it failed and Will stands.  (a) With a valid-Will, after caveat failure, Plaintiff is denied standing in Estate case wherein she is sole-legatee;  (b) after caveat's failure, and over Plaintiff's strenuous objections, a "redistribution agreement" was "approved," in violation of *Brewer*;  (c) after approval, alleged contract's condition precedent failed and, as a matter of law, alleged contract failed;  (d) Will has been rewritten and altered several times over;  (e) pretext of contract modifying Will was used to take away Plaintiff's entire inheritance;  (f) because contract failed, it is perpetually rewritten to take out any disliked/failed terms, without Plaintiff's consent and over her objections;  (g) distributions of Plaintiff's inheritance/bequest are made to non-legatees pursuant to failed contract and in violation of *Brewer*;  (h) Plaintiff's vehement requests to correct errors are simply dismissed as frivolous;  (i) Plaintiff is constantly being fined, sanctioned, punished and threatened with more fines/sanctions, unless she accepts that her inheritance was taken away under a pretext of a contract rewriting a Will, perpetually being rewritten, and redistributed to a never ending laundry list of legatees;  (J) ROW and/or his agent didn't protect Will, Decedent/Testator's intentions, or sole-legatee's inheritance, rather ROW and/or his agent advocated for disinherited persons and challengers to Will, nor did ROW remove its agent;  (k) distributions contrary to Will have been made, are

being made, and will be made;  (L) Plaintiff was removed as personal representative at

appx.10PM, even though caveat failed and Will stands;  (m) Plaintiff is constantly called

illiterate and stupid by ROW and/or his agent; and/or, (n) ROW and/or his agent

willfully, intentionally, and purposefully submitted a proposed order wherein Plaintiff

was falsely accused of repeatedly holding herself out as her former father-in-law's wife,

i.e., incest.

193.       For other Marylanders, presumably governed by the same laws:  (a) with a valid-

Will, after caveat failure, no legatee is denied standing in estate or removed as personal

representative;  (b) after caveat's failure, and with legatee's objection, a "redistribution

agreement" cannot be "approved," by and with challengers and non-legatees;  (c)  even

assuming a valid-*Brewer* agreement, when contract's condition precedent failed, then, as

a matter of law, contract failed;  (d) no Will has ever been rewritten or materially altered;

(e) no pretext of contract modifying Will was ever used to take away anyone's

inheritance;  (f) because contract failed, it cannot be rewritten to take out disliked/failed

terms, without written consent from Plaintiff;  (g) no distributions of an inheritance can

be made to non-legatees pursuant to failed contract, in violation of *Brewer*, and failed

caveat;  (h) others have a right and standing to correct errors at any time, *Radcliff*;  (i) no

other sole-legatee, under a Will with a failed caveat has ever been fined, sanctioned, or

threatened with more fines/sanctions for demanding that Will be enforced, and never

have legatees been simply invented out of cloth;  (J) ROW does protect Wills, testators'

intentions, and legatees' inheritances, and never advocates for disinherited persons or

challengers to Will;  (k) distributions contrary to Will can never be made under ET

Article;  (L) after a failed caveat, a nominated personal representative under a Will

cannot be removed, because Will stands;  (m) no other sole-legatee, under a valid-Will, has been called illiterate or stupid by ROW and/or his agent; and/or, (n) never has ROW and/or his agent submitted a proposed order wherein sole-legatee is falsely accused of incest.

194.    Plaintiff has a "reasonably close resemblance" in all material respects to individuals with whom she seeks to compare herself.

195.    The proffered comparator(s) were treated fairly and within the laws of Maryland, but Plaintiff was treated differently due to her race, national origin, ethnic characteristics, ancestry, or other impermissible factor.

- *In re Estate of Sorrell*, CSA-REG-2572-2013, unreported, 3/2/2016; (b).
- *Taylor v. Fisher*, CSA-REG-3293-2018, unreported, 11/9/2020; (b).
- *Brewer v. Brewer*, 386 Md. 183 (2005); (b).
- *Shealer v. Straka*, 459 Md. 68 (2018); (a. caveat)
- *Carrier v. Crestar*, 316 Md. 700 (1989); (a. standing)
- *Spry v. Gooner*, 190 Md.App. 1 (2010); (a. standing)
- *Vito v. Klausmeyer*, 216 Md.App. 376 (2014); (a. standing)

196.    But for Defendants unlawful conduct, Plaintiff was mistreated because of her race, ancestry, or ethnic characteristics, and that treatment resulted in Plaintiff suffering harm that would not have otherwise occurred.

### Count IV:  *Olech*

197.    Plaintiff incorporates by reference all allegations set forth within the 4-corners of this Complaint, regardless of whether above or below Count IV.

198.    Plaintiff requested Defendants follow Decedent/Testator's stated intentions within the 4-corners of his Will wherein Plaintiff is designated executor and sole-legatee.

199.    Plaintiff was removed as Personal Representative at approx. 10PM under a pretense of a caveat, which failed.

200.    Decedent's Will was not invalidated and caveat didn't prevail, but Plaintiff was

nonetheless removed as Personal Representative only to be replaced by ROW's agent.

201.    Plaintiff was removed as Personal Representative on 9/9/16; and, on 11/10/21 was

removed from the Will because she receives nothing under the express terms of the Will,

as presumably rewritten by Defendants.

202.    Defendants presented an illegal "redistribution agreement" in violation of *Brewer*.

203.    In *In re Estate of Sorrell*, CSA-REG-2572-2013, unreported (3/2/16), a similar

"redistribution agreement" was rejected.

204.    Even assuming a valid-*Brewer* "redistribution agreement" by and among only

legatees, it nonetheless was an executory "redistribution agreement" with a condition

precedent.

205.    Condition failed and, as a matter of law, alleged "redistribution agreement" failed

with it.

206.    In *Griffith v. Scheungrab*, 219 Md. 27 (1958), when condition fails, "there is no

duty of performance" *Id.* at 34.

207.    In *Gebhardt v. Md.Port Admin.*, 188 Md.App. 532, 567 (2009), when condition

was "<u>un</u>satisfied, the corresponding contractual duty of party whose performance was

conditioned on it does not arise."

208.    Even with an illegal "redistribution agreement," whose condition nonetheless

failed, Defendants refuse to release Plaintiff's bequest/inheritance per the terms of a

valid-Will.

209.    Plaintiff was similarly situated and requested adherence to the Rule of Law from

Defendants and their agents.

210.     Plaintiff and her comparator(s) are *prima facie* identical in all relevant respects,

yet Plaintiff was treated differently by Defendants.

211.     Denying Plaintiff "standing;" ejecting her from a valid-Will by falsely alleging

that she receives nothing under the terms of that Will; constantly inventing new

"legatees" to displace Plaintiff; and, refusing to follow basic contract law, "in this case

appears to us to rest on an irrational prejudice against the" Plaintiff. *City of Cleburne v.*

*Cleburne Living Center*, 473 U.S. 432, 450 (1985).

212.     But for Defendants unlawful conduct, Plaintiff was mistreated because of her

race, ancestry, or ethnic characteristics, and that treatment resulted in Plaintiff suffering

harm that would not have otherwise occurred.

### Count V: Fabricated Evidence,[5] 42 U.S.C. §1983:

State actors seeking to frame citizens undermine fundamental fairness and are
responsible for "corruption of the truth-seeking function of the trial process."
*United States v. Agurs*, 427 U.S. 97, 104 (1976).

213.     Plaintiff incorporates by reference all allegations set forth within the 4-corners of

this Complaint, regardless of whether above or below Count V.

214.     Defendants with their agents deliberately fabricated, suppressed, and destroyed

evidence from inception of seizing Decedent's Estate.

215.     Defendants with the use of fabricated evidence have deprived Plaintiff of her

entire inheritance, removed her from a valid-Will, and punished her for demanding her

inheritance.

---

[5] Plaintiff alleges a variety of wrongful acts including fabrication, suppression, or destruction of
evidence; corruption, perjury, misrepresentations, withholding adverse authority, ethics
violations, false affidavits, false identities, false claims, etc.  For ease of reference, all such
wrongful acts are collectively referred to as fabrication of evidence.

216.     Defendants and their agents entered into a joint defense agreement with challengers to Will.

217.     The joint defense agreement cloaked all communications with challengers to the Will as "privileged."

218.     Immediately after ROW appointed his agent, the Will was completely discarded, even though caveat failed on 9/9/16.

219.     ROW's agent had at least one *ex parte* telephone call with then administrative judge to discuss estate matter and affect outcomes.

220.     ROW's agent "jokes" that there may be more *ex parte* communications with other judges.

221.     ROW's agent unlawfully had *ex parte* communications with a state judge to affect outcomes.

222.     Title 18 of the Maryland Rules prohibit *ex parte* communications and command a contacted judge disclose the contact or attempted contact on the docket report.

223.     The contacted judge did not disclose *ex parte* communications on the docket report, in violation of Title 18.

224.     ROW's agent is the ex-wife of a state judge; she remarried and legally changed her name in 2007.

225.     Since 2007, ROW's agent, with ROW's knowledge, uses many false identities, including "Lynn C. Boynton."

226.     ROW appointed a person he knows/knew was using a false identity.

227.     A person using a fictional identity, a stage-name or a pseudonym, can't be lawfully appointed to any position by ROW, much less a "fiduciary."

228.    ROW and/or his agent are theoretically charged with defending the Will and protecting sole-legatee's interests.

229.    ROW and/or his agent sought to undermine the Will, and sole-legatee's interests, from day one of her so-called appointment.

230.    ROW and/or his agent knew *Brewer* prohibits coercing a sole-legatee into entering into a "redistribution agreement" with challengers to Will.

231.    ROW's agent falsely represented that a sole-legatee can enter into a "redistribution agreement" by and with challengers to Will.

232.    Even after caveat failed on 9/9/16, ROW and/or his agent continued to misrepresent that caveat didn't take place.

233.    Even after US Dept. of Homeland Security Report was provided, ROW and/or his agent continued to argue and advocate for a bigamous-wife and supported a fraudulent claim against the Estate and Plaintiff's inheritance.

234.    ROW's agent, by testifying, violated Rule 19-303.7(a); secondly, failed to disclose *Brewer*, and, thirdly, falsely testified that Tina, disinherited and former-caveator, was still a caveat-holder with standing, and shall return 100% of Duke stocks to Estate within 10-days to satisfy condition of an alleged "redistribution agreement" to "settle" caveator's claim against Estate.

235.    ROW and/or his agent, when condition failed, concealed that information and sought to frustrate Plaintiff's inheritance.

236.    ROW and/or his agent misrepresented that Plaintiff has no "standing" to challenge failure of condition because Plaintiff receives nothing under the terms of a valid-Will.

237.     ROW and/or his agent, rather than act with urgency to distribute Plaintiff's inheritance, have obstructed the lawful execution of Decedent's Will.

238.     ROW and/or his agent, falsely represented to Maryland courts, after 9/9/16, that there is a caveator and that caveat is still pending; falsely represented, after receipt and full-knowledge of Homeland Security Report, that Decedent passed away lawfully married to Neela and she is entitled to a spousal claim, which they supported as a valid and lawful claim.

239.     No sensible concept of ordered liberty is consistent with Defendants and their agents "cooking up its own evidence." *Black v. Montgomery County*, 835 F.3d 358, 370 (3rd Cir. 2016) (a stand-alone due process claim against a state actor for fabrication of evidence).

240.     ROW and/or his agent falsely represented to Maryland courts that there was a valid *Brewer* agreement.

241.     ROW and/or his agent falsely represented to Maryland courts that Plaintiff receives nothing under the terms of Decedent's Will.

242.     ROW and/or his agent falsely represented to Maryland courts that Decedent and Plaintiff had incestuous relations.

243.     ROW and/or his agent falsely represented to Maryland courts that Neela was Decedent's lawful wife and "legatee."

244.     ROW and/or his agent illegally and fraudulently filed and paid "joint" state and federal tax returns for Decedent and Neela as husband and wife from Estate funds.

245.     "[T]he harm of the fabrication is corrupting regardless of the outcome at trial or

the particular time in the proceeding that the corruption occurs." *Black v. Montgomery

County*, at 371.

246.     Plaintiff was mistreated due to racial, ancestry, or ethnic animus.

247.     There is a reasonable likelihood that, absent fabricated evidence, Plaintiff would

not have been denied her inheritance and ejected from the Estate.

248.     The fabricated evidence was so significant that it could have affected the outcome

in the Estate matters.

249.     The proponents of the evidence were aware that evidence was incorrect or offered

it in bad faith.

250.     But for Defendants unlawful conduct, Plaintiff was mistreated because of her

race, ancestry, or ethnic characteristics, and that treatment resulted in Plaintiff suffering

harm that would not have otherwise occurred.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for judgment as follows:

251.     A declaration that Plaintiff was treated differently because of her race, ancestry or

ethnic characteristics, and that treatment resulted in Plaintiff suffering harm.

252.     Specifically, a valid *Brewer* "redistribution agreement" was never formed, and

even if agreement was formed, it was wholly executory, which nonetheless failed when

condition failed on 5/2/19; Plaintiff was wrongly ejected, on 11/10/2021, as a person with

no "standing" because she receives nothing under the terms of a valid-Will; Plaintiff is

sole-legatee and nominated Executor; and, Plaintiff was falsely accused of incest.

253.     Plaintiff must receive her full inheritance per the terms of Testator's valid-Will, without any deductions, and with pre- and post-judgment interest.

254.     Plaintiff was the then daughter-in-law of Decedent and Testator, and the false *public* pronouncement, publication, distribution of incest is so outrageous, flagrant, willful, and in gross or intentional disregard for the rights of Plaintiff that punitive damages are appropriate.

255.     Plaintiff seeks general or compensatory damages for emotional distress, humiliation, embarrassment, emotional and mental anguish, and for peace and happiness.

256.     Plaintiff seeks special damages, which are damages for actual monetary loss of use, possession, and investment of, occasioned by the acts of discrimination and deprivation of bequest/property.

257.     Plaintiff seeks an award of costs of litigation, including attorneys' fees, as applicable.

258.     Plaintiff seeks equitable remedies as fashioned by this Court to protect Plaintiff's rights.

259.     Plaintiff seeks any further relief to which she may be entitled.

**Demand for Jury Trial**

260.     Plaintiff requests a trial by jury on all issues so triable.

Dated:  January 14, 2022; and, Respectfully Submitted:


*Jane Roe*
_____
Ms. Jane Roe, a pseudonym, *pro se*
Mailing Address:
5301 Westbard Circle, Apt. 407
Bethesda, Md.  20816