IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

OXANA N. PARIKH,                    *
                                   *
        Plaintiff,                 *
                                   *        Civil Action No. 8:22-cv-00110-PX
    v.                             *
                                   *
BRIAN FROSH *et al.*,              *
                                   *
        Defendants.                *
                                   *
                                 ***

## MEMORANDUM OPINION

Pending before the Court are two motions to dismiss the Amended Complaint filed by

Defendants Brian Frosh in his official capacity as Attorney General, Joseph Griffin in his official

capacity as Register of Wills for Montgomery County, James J. Debelius, and Lynn Caudle

Pendleton.  ECF Nos. 16 & 26.  Also pending is the Motion for Sanctions filed by Debelius and

Pendleton.  ECF No. 32.  All motions are fully briefed, and no hearing is necessary.  *See* D. Md.

Loc. R. 105.6.  For the reasons that follow, the Court GRANTS the motions to dismiss and

GRANTS in part the sanctions motion.

### I.    Background

This dispute concerns the estate of Dr. Dinesh O. Parikh, who left his loved ones an

approximately $1.5 million inheritance (the "Estate").  *See* ECF No. 12 ¶¶ 95, 282.  Dr. Parikh is

survived by his spouse, Neela, and two adult children, Tina Parikh-Smith and Namish Parikh.

ECF No. 26-3 at 2.  Plaintiff Oxana N. Parikh ("Plaintiff" or "Oxana") is the ex-wife of Namish

Parikh, and the former daughter-in-law of the decedent.  *See* ECF No. 12 ¶¶ 1, 65.  Under the

terms of Dr. Parikh's Last Will and Testament (the "Will"), Oxana was named the Estate's

personal representative and sole legatee.  *Id.* ¶¶ 57, 97, 103, 170, 303.  The Will did not provide

for Neela, Tina, or Namish.  Consequently, the family feud over the disbursement of the Estate has spawned tortured litigation that necessitates detailed review.[1]

### A.  Early State Court Proceedings

The Will was probated on June 22, 2016.  ECF No. 16-2 at 1; *In the Estate of Dinesh O. Parikh*, No. W87973 ("Probate action").  Soon after, on July 11, 2016, Tina petitioned to caveat the Will and remove Oxana as personal representative.  ECF No. 16-2 Dkt. Nos. 22 & 23; *see also* ECF No. 31-6.  Tina alleged that Oxana had abused her power of attorney to misappropriate $1.14 million from Dinesh and to fraudulently file on Dinesh's behalf an uncontested divorce from Neela, all during the final months of the decedent's life.  ECF No. 31-6 ¶¶ 12 – 16; ECF No. 31-7 at 2.  The Montgomery County Orphan's Court held an emergency evidentiary hearing on September 9, 2016, after which it removed Oxana as personal representative and appointed Pendleton—a neutral third party—as Special Administrator for the Estate.  ECF No. 12 ¶ 304; ECF No. 16-2 Dkt. No. 61; ECF No. 26-8; ECF No. 31-10 at 74:19 – 75:10.[2]

On October 6, 2016, Pendleton filed a separate action on behalf of the Estate against Oxana and Namish in the Circuit Court for Montgomery County to recoup the misappropriated funds.  *Lynn Caudle Boynton v. Oxana Parikh et al.*, No. 425847V (filed Oct. 6, 2016) ("Circuit Court action"); *see also* ECF No. 26-3 at 6, 42.  Pendleton moved for pre-judgment attachment of the funds, which the Circuit Court granted.  Next, Pendleton and the Parikhs mediated the matter and reached a settlement in principle, as memorialized in a settlement agreement (the

---

[1] The Court considers "allegations in the [amended] complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic."  *Martynuska v. BWW Law Grp., LLC*, No. DKC-19-0660, 2020 WL 374464, at *1 n.1 (D. Md. Jan. 23, 2020) (citing *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).  As always, at the motion to dismiss stage, the Court construes the complaint facts as true and most favorably to the Plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  Also, the Court refers to the family members by their first names to avoid confusion.

[2] Throughout the underlying state proceedings that are the subject of this litigation, Pendleton also went by the name "Lynn Boynton."  To avoid confusion, the Court will refer to her as Pendleton throughout this opinion.

"Agreement").  The Agreement required that the $1.14 million in misappropriated funds be paid to Pendleton as Special Administrator, who would next distribute the proceeds with roughly 57 percent to Namish and 43 percent to Tina and Neela.  ECF No. 26-10 ¶¶ 1, 3, 11.

On November 17, 2016, Oxana and Namish agreed to return the $1.14 million into an escrow account.  ECF No. 31-11 at 1.  Oxana and Namish deposited the funds, but otherwise they repudiated the Agreement.  They next filed counterclaims in the Circuit Court action, challenging Pendleton's actions as Special Administrator.  *See* ECF No. 26-16.  The claims averred that Pendleton abusively froze the deposited funds; negligently breached her fiduciary duty to the Estate; and that the opposing parties conspired to "invalidate the Will, seize the personal assets of Namish and Oxana, and distribute those ill-gotten gains in a manner which perverts the terms of the Will."  *Id.* ¶¶ 54 – 78.

In response, Pendleton, Neela, and Tina moved to dismiss the counterclaims and for summary judgment in their favor regarding Oxana's breach of fiduciary duty as power of attorney.  Pendleton also moved for sanctions to be imposed against Oxana and Namish for their refusal to engage in discovery in the Circuit Court proceedings.  ECF No. 26-3 at 9.  After a hearing, the Circuit Court entered several orders that dismissed the counterclaims, granted summary judgment in Pendleton's favor on the fiduciary breach claim, and granted Pendleton's motion for sanctions.  The Circuit Court separately ordered that the $1.14 million of the misappropriated funds be paid to the Estate.

Around the same time, in the Probate action, Tina moved to enforce the Agreement.  ECF No. 16-2 Dkt. No. 112.  Oxana opposed the motion, asserting an array of far-flung arguments. ECF No. 16-2 Dkt. No. 117; *see generally* ECF No. 26-17.  Following a hearing April 24 and 25, 2017, the Orphan's Court granted Tina's motion and declared the Agreement valid and

3

enforceable.  ECF No. 16-2 Dkt. Nos. 139 – 41, 161; *see also* ECF Nos. 26-9, 31-12, 31-13, 31-14, & 31-15.

Oxana reacted poorly to these adverse decisions.  On August 17, 2017, she filed an emergency motion to transfer the Probate action to Baltimore City, arguing that because Pendleton and her counsel, James Debelius, enjoyed close, personal relationships with several Montgomery County Circuit Judges, she could not receive a fair trial in that court.  ECF No. 16-2 Dkt. No. 167; ECF No. 26-4 at 22 – 23.  Oxana also renewed her efforts to remove Pendleton as Special Administrator.  ECF No. 16-2 Dkt. No. 180.  The Circuit Court denied the motions. ECF No. 16-2 Dkt. No. 198.

For several years after, Oxana engaged in what can only be described as vexatious and obstructive litigation tactics aimed at thwarting Pendleton's efforts to carry out her duties as Special Administrator.  For example, when Pendleton, through Debelius, filed a routine notice of expenses report for the Estate, ECF No. 26-12 at 3, Oxana opposed the notice, lodging baseless accusations that she had been "wrongfully removed, under suspicious circumstances" as the "sole legatee" by "a disinherited daughter with no standing to seek removal of the Personal Representative."  ECF No. 26-13 ¶¶ 1, 2.  In the same opposition, Oxana described Pendleton as "a putative special administrator, with a purported name of Lynn C. Boynton," and further objected to Debelius' role in the Estate's administration.  *Id.* ¶¶ 4, 6, 8 ("[T]he putative special administrator had no authority to hire and/or to retain an attorney to represent her."); *see also* ECF No. 16-2 Dkt. Nos. 196, 219, 229, & 262 (opposing similar notices).  The Orphan's Court has soundly overruled each of Oxana's objections.  *See, e.g.*, ECF No. 26-11; *see also* ECF No. 16-2 Dkt. Nos. 208, 215, & 222.

Oxana also persisted in moving to oust Pendleton as Special Administrator and transfer both the Probate and Circuit Court actions to Baltimore City.  ECF No. 16-2 Dkt. Nos. 239, 240, & 245; *see generally* ECF No. 26-18.  Particular to the Circuit Court action, Oxana submitted a robust pleading of her grievances against Pendleton and Debelius.  ECF No. 26-18 at 7.  She called them "imposters"; accused Debelius of "fraud" and "misrepresentation" in his representation of Pendleton; and asserted that Pendleton "does not exist."  *Id.* at 7 – 8, 15, 21. She also suggested that Debelius' advocacy had been motivated by his racial animus toward "dark-skinned immigrants."  *Id.* at 10.  Again, the Circuit Court rejected every assertion.

Next, in the Probate action, Oxana resurrected arguments, which the Orphan's Court had long since rejected, to set aside the Agreement.  ECF No. 16-2 Dkt. No. 328; ECF No. 26-19. She accused Debelius of fraud and other related claims, and vilified him and Pendleton as "liars and cheaters."  ECF No. 26-19 at 3 n.3.  As to Debelius specifically, Oxana argued that he "used fake-contract obtained by perjury to obtain final judgments in circuit court.  He couldn't contain his ***joy***; he celebrated perjury."  *Id.* at 21.  Oxana continued, "The ***truth*** is 'Lynn Caudle Boynton' is an unlawful pseudonym used by 'Lynn Caudle Pendleton'" and "since Fake-boynton is Fake, Then Unethical-debelius is Unethical."  *Id.* at 29, 30.  Oxana also moved, again, to challenge the Orphan's Court 2016 order that removed her as personal representative.  ECF No. 16-2 Dkt. No. 331; ECF No. 26-20.  On October 21, 2020, the Orphan's Court denied both petitions, along with 13 other related petitions and motions filed by the Plaintiff.  ECF No. 16-2 Dkt. No. 340 – 54.

### B.  Appealing Adverse Rulings

On appeal, Oxana employed the same head-spinning litigation strategy by separately challenging nearly every adverse decision.  On January 16, 2019, the Appellate Court of

Maryland issued the first of five decisions rejecting Oxana's serial challenges. *See generally* ECF No. 26-3 (*Parikh* I). *Parikh* I consolidated the appeals of three different orders from the Probate action, namely the September 2016 Order dismissing Oxana as Personal Representative and appointing Pendleton as Special Administrator; the May 2017 Order enforcing the Agreement; and the August 2017 Order declaring the Agreement valid and enforceable. ECF No. 26-3 at 12. *Parikh* I also reviewed the various May 2017 orders from the Circuit Court action related to Oxana and Namish's counterclaims. *Id.* In total, this consolidated appeal involved 21 questions, over 300 pages of briefing, and roughly 1600 pages of exhibits. *Id.*

Ultimately, in a 60-page opinion, the Appellate Court rejected each of Oxana's arguments. *See generally* ECF No. 26-3. Much of the Court's analyses turned on its conclusion that the Orphan's Court had not erred in finding the Agreement to be binding and enforceable. *Id.* at 16 – 30, 32 – 34. Likewise, the Appellate Court found no infirmity in Pendleton's authority as Special Administrator, and squarely rejected any claim of unfair bias. *Id.* at 31, 41 – 46. Last, the Appellate Court affirmed the Circuit Court's imposition of sanctions against Oxana for her discovery violations. *Id.* at 49 – 50.

On March 23, 2020, the Appellate Court issued its second decision, resolving 38 questions presented in five consolidated appeals. ECF No. 26-4 at 2 (*Parikh* II). The Court again affirmed all lower court decisions adverse to Oxana, including one denying her petition for reinstatement as personal representative, as well as the orders overruling Oxana's challenges to Pendleton's notices of payment. ECF No. 26-4 at 2, 5 – 10. The Appellate Court specifically commented that it had already addressed related issues in *Parikh* I, *id.* at 11 – 15, and once again, specifically noted that "no evidence" supported Oxana's farfetched claims of "impropriety or personal bias" as explanations for her seriatim losses. *Id.* at 25.

On April 7, 2021, the Appellate Court issued its third decision, which solely reviewed the Circuit Court's January 27, 2020, order denying Oxana's motion to set aside the final judgment and transfer the action to Baltimore City.  ECF No. 26-5 at 2 (*Parikh* III).  The Court described Oxana's brief as "a mishmash of conspiracy theories and intemperate rhetoric, so much so that it is difficult to discern actual legal arguments."  *Id.* at 5.  The Court held that many of Oxana's claims were "precluded from review" because they "were or could have been decided in previous appeals"; this included Oxana's allegations of fraud as to Debelius and Pendleton.  *Id.* at 5, 7 – 11.  As to Oxana's other contentions, the Appellate Court otherwise affirmed the Circuit Court decision in all respects.  *Id.* at 16.

Also in *Parikh* III, the Appellate Court addressed the propriety of sanctions against Oxana.  In so doing, the Court noted Oxana and Namish's "use of the appeals process to pursue their vexatious litigation and meritless arguments warrants a finding of both bad faith and lack of substantial justification."  ECF No. 26-5 at 20.  Critically, the Appellate Court concluded that,

> Appellants devised bad faith claims of fraud, based on personal attacks and vitriolic diatribes against opposing parties and counsel.  Appellants' allegations of perjury and fraudulent ex parte communications on the part of Attorney Debelius were unsupported by any credible evidence.  The pursuit of the recusal of Judge Rubin and transfer of the case to Baltimore City was completely without merit and undertaken primarily to harass appellees and delay the finality of the case.  We struggle to characterize appellants' challenges to Tina's share of the estate and SA Boynton's 'existence' as anything short of a vengeful crusade anchored in bad faith and pursued without substantial justification.

*Id.* at 21.  Accordingly, the Appellate Court determined that the appeal was frivolous and thus granted the motion for attorney's fees and remanded to the Circuit Court for further proceedings consistent with its decision.  *Id.* at 22.

Next, on September 28, 2021, the Appellate Court summarily affirmed that Oxana lacked standing to continually contest the administration of the Estate in the Probate Action, and otherwise rejected all of Namish's contentions on the merits.  *See* ECF No. 26-6 at 4 – 6 (*Parikh*

IV).  As for sanctions, the Appellate Court again concluded that the appeal was "baseless and entirely lacking in merit," and pursued "with the purpose of intentional harassment and delay of the administration of the estate."  *Id.* at 14.  Thus, the Appellate Court awarded "reasonable attorneys' fees for the costs incurred in defending against this frivolous appeal."  *Id.*

In the most recent appeal, the Appellate Court reviewed a "rehash of various meritless arguments presented in their prior appeals" concerning the Circuit Court action.  ECF No. 26-7 at 6 (*Parikh* V).  The Court also concluded that the Agreement as to each party bearing her own litigation costs did not affect the imposition of attorneys' fees as a sanction for litigation misconduct, and so, affirmed the Circuit Court decision to award Pendleton reasonable attorneys' fees.  *Id.* at 9.

### C.  Current State Court Litigation

Even though it has been conclusively established that Oxana lacks standing to participate in the Probation action, she continues to file scores of motions, repeating the same baseless claims rejected several times over.  *See, e.g.*, *In the Estate of Dinesh O. Parikh*, No. W87973, Dkt. No. 474 (filed Oct. 20, 2022) ("Sole-Legatee in Unaltered Will and Sole-Interested Person Ms. Oxana Parikh's Petition to Remove Imposter 'Lynn C. Pendleton,' Feigning To Be Personal Representative; And, Proposed Order.").   Several such motions are pending, as is another appeal to the Appellate Court and a petition for mandamus before the Supreme Court of Maryland.  *In re the Matter of the Estate of Dinesh O. Parikh*, No. CSA-REG-0807-2022 (notice of appeal filed June 28, 2022); *Namish Parikh, et al. v. Joseph M. Griffin. ROW, Montgomery Cnty.*, No. COA-MISC-0012-2022 (filed Nov. 1, 2022).

### D. This Lawsuit

This suit, filed on January 14, 2022, bears the same hallmarks of Plaintiff's frivolous and vexatious litigation tactics that she has used in the state litigation for six long years. The Amended Complaint spans 64 pages and 387 paragraphs, all concerning the underlying state actions. It also includes what appear to be partial screenshots from the state court dockets, out-of-context excerpts from state court decisions or filings, exhibits, and block quotes from secondary sources on trusts and estates. *See, e.g.*, ECF No. 12 ¶¶ 14, 16, 22, 26, 27, 34, 56, 67, 75, 79, 142. The Amended Complaint alleges broadly that the defendants violated her right to contract under 42 U.S.C. §§ 1981 & 1983 (Count I), interfered with her property rights under 42 U.S.C. §§ 1982 & 1983 (Count II), denied her equal protection under 42 U.S.C. § 1983 (Counts III & IV), and fabricated or destroyed evidence in violation of 42 U.S.C. § 1983 (Count V); as to Defendants Debelius and Pendleton, the Amended Complaint accuses them of defamation (Count VI) and fraudulent misrepresentation (Count VII). Plaintiff seeks as relief "her full inheritance per the Terms of Testator's ***unaltered*** valid-Will" plus additional compensation and declaratory relief. ECF No. 12 ¶¶ 376 – 86 (emphasis in original). Defendants now ask this Court to dismiss the claims and impose sanctions. ECF Nos. 16, 26, & 32.

## II.   Standard of Review

A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "addresses whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of his claim[.]" *Holloway v. Pagan River Dockside Seafood, Inc*., 669 F.3d 448, 452 (4th Cir. 2012). "The plaintiff bears the burden of establishing subject matter jurisdiction." *Duncan v. Kavanagh*, 439 F. Supp. 3d 576, 581 (D. Md. 2020). A defendant can challenge subject matter jurisdiction by either: (1) "'attacking the

veracity of the allegations contained in the complaint;' or (2) 'by contending that, even assuming that the allegations are true, the complaint fails to set forth facts upon which jurisdiction is proper.'" *Id.* (quoting *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013)).  "When a defendant uses the latter method to contest subject matter jurisdiction, the plaintiff 'is afforded the same procedural protection as he would receive under Rule 12(b)(6) consideration.'" *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff.  *Ibarra*, 120 F.3d at 474.  To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  The Court must be able to deduce "more than the mere possibility of misconduct"; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief.  *See Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015) (quoting *Iqbal*, 556 U.S. at 679), *aff'd in relevant part*, 659 F. App'x 744 (4th Cir. 2016).

When reviewing a motion to dismiss, the Court may consider documents attached to the motion provided that they are "integral to and explicitly relied on in the compliant, and when the [plaintiff does] not challenge the document's authenticity."  *Wallace v. Moyer*, No. CCB-17-3718, 2020 WL 1506343, at *4 (D. Md. Mar. 30, 2020) (quoting *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 – 07 (4th Cir. 2015)); *see also Sec'y of State for Defence v. Trimble*

*Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).  In addition, "[a] federal district court may take judicial notice of documents from state court proceedings and other matters of public record in conjunction with a Rule 12(b)(6) motion without converting it to a motion for summary judgment."  *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 246 n.2 (D. Md. 2013) (reviewing docket sheet from state foreclosure proceeding) (citing *Philips*, 572 F.3d at 180); *see also U.S. v. O'Brien*, 356 F. Supp. 3d 518, 521 – 22 (D. Md. 2018) (taking judicial notice of probate proceedings).[3]

Because Plaintiff proceeds pro se, the Court must give her pleadings an especially charitable reading so to let all potentially viable claims proceed on the merits.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  But "even a *pro se* complaint must be dismissed if it does not allege a 'plausible claim for relief.'"  *Forquer v. Schlee*, No. RDB-12-969, 2012 WL 6087491, at *3 (D. Md. Dec. 4, 2012) (quoting *Iqbal*, 556 U.S. at 679).  Ultimately, a complaint must "permit the court to infer more than the mere possibility of misconduct based upon its judicial experience and common sense."  *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679) (internal quotes and alterations omitted).

## III.    Analysis

The Court turns first to those arguments that implicate its jurisdiction to hear the case.

### A.  Claims Barred by *Rooker-Feldman* Doctrine

All defendants contend that the claims are barred under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine precludes litigation of "cases brought by state-court losers

---

[3] Defendants attached exhibits from the underlying state court proceedings that Plaintiff references throughout the Amended Complaint.  Plaintiff does not contest the authenticity of these documents.  Dockets from the Probate and Circuit actions are also available online at http://registers.maryland.gov/main/search.html and http://casesearch.courts.state.md.us.

complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  The doctrine derives from the rule that the power to review state court decisions lies not with a federal district court, but rather "exclusively with superior state courts and, ultimately, the United States Supreme Court."  *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997); *see* 28 U.S.C. § 1257.

That said, the Court must construe the *Rooker-Feldman* doctrine narrowly; it does not bar federal courts from considering "the same or a related question [that] was earlier aired between the parties in state court," so long as the movant is not seeking "review of the state court judgment itself[.]"  *Thana v. Bd. of License Comm'rs for Charles Cnty., Md.*, 827 F.3d 314, 320 (4th Cir. 2016) (internal quotation marks omitted); *see also Elyazidi v. SunTrust Bank*, 780 F.3d 227, 233 (4th Cir. 2015).  So even if this Court's decision "may call into question the correctness of a state court judgment," that alone does not deprive the court of jurisdiction under *Rooker-Feldman*.  *Vicks v. Ocwen Loan Servicing, LLC*, 676 F. App'x 167, 169 (4th Cir. 2017).

Although the Amended Complaint overlaps significantly with matters raised in the state court actions, adjudication of the claims does not require this Court to sit in review of the state court proceedings.  *Vicks*, 676 F. App'x at 169.  Plaintiff is challenging alleged misconduct by Defendants, not by the state courts.  Thus, the claims do not implicate *Rooker-Feldman*. Dismissal is denied on that ground.

### B.  Eleventh Amendment Immunity as to Frosh and Griffin

Defendants Frosh and Griffin argue that, as agents of the state, they are immune from suit under the  Eleventh Amendment of the United States Constitution.  *See* ECF No. 16-1 at 8 – 10. The Eleventh Amendment generally prohibits citizen suits against states or state agents in federal

court.  *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office."); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).  Because Eleventh Amendment immunity "is an immunity from suit rather than a mere defense to liability," it must be addressed in advance of reaching the merits of the claims.  *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 482 (4th Cir. 2005).  Defendants bear the burden of demonstrating that the Eleventh Amendment bars suit against them.  *Hutto v. S.C. Retirement Sys.*, 773 F.3d 536, 543 (4th Cir. 2014).

As state officials, Frosh and Griffin presumptively enjoy Eleventh Amendment immunity from suit for acts taken in their official capacities.  *See Sikes v. Ward*, No. TDC-16-4108, 2017 WL 6055686, at *4 (D. Md. Dec. 6, 2017).  Further, the Court sees no basis to apply any of the well-recognized exceptions to Eleventh Amendment immunity here.  Plainly, Congress has not limited or abrogated immunity for any of the statutory causes of action.  *See Lee-Thomas v. Prince George's Cnty. Public Schools*, 666 F.3d 244, 249 (4th Cir. 2012).  Nor have Frosh or Griffin waived their protections against federal suit.  *See id.*

As to the final exception, that articulated in *Ex Parte Young*, 209 U.S. 123 (1908), Frosh and Griffin's mere status as state officials does not trigger its application.  The *Ex Parte Young* exception provides that state officers may be subject to federal suit where the plaintiff seeks "prospective relief from ongoing violations of federal law."  *Allen v. Cooper*, 895 F.3d 337, 354 (4th Cir. 2018).  Importantly, however, *Ex Parte Young* applies only where a "special relation" exists between the state official and the allegedly unlawful conduct.  *See McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (quoting *Ex Parte Young*, 209 U.S. at 157); that is, the state

official must have "proximity to and responsibility for the challenged state action[.]" *Id.* (quoting *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008)).  Mere "[g]eneral authority to enforce the laws of the state is an insufficient ground for abrogating Eleventh Amendment immunity." *Wright v. N.C.*, 787 F.3d 256, 262 (4th Cir. 2015) (quoting *S.C. Wildlife Fed'n*, 549 F.3d at 333).

The Amended Complaint avers solely that Frosh "is responsible for the laws and legal procedures within the State" and "exercise[s] oversight and administer[s] the proper administration of decedents' estates in Montgomery County."  ECF No. 12 ¶¶ 9, 19.  From this, the Amended Complaint blames Frosh for Pendleton's appointment as Special Administrator for the Estate and for all consequential adverse events flowing from her appointment.  *See generally* ECF No. 12.  But no facts make plausible that Frosh, as Maryland Attorney General, had any connection with this matter whatsoever.  Occupying the office of Attorney General alone does not suffice.  *See McBurney*, 616 F.3d at 399 – 402 (dismissing suit where Virginia Attorney General lacked "special relation" to challenged statute); *cf. Sikes*, 2017 WL 6055686, at *5 (dismissing suit against General Frosh because he "has neither proximity to nor responsibility for the enforcement of Maryland's foreclosure laws").

As to Griffin, Plaintiff similarly attempts to hold him liable because, as Register of Wills, he "is responsible for the proper, lawful, and timely administration of all estates within Montgomery County," and because he issued letters regarding Pendleton's appointment.  ECF No. 12 ¶¶ 10, 26 – 27, 79.  Plaintiff's liability theory sweeps too broadly.  As to the Estate, Griffin is akin to a clerk of the court.  Md. Code Ann., Est. & Trusts § 2-201(b).  In that capacity, he acts under the direction of the Orphan's Court to issue and process letters and orders as directed.  *See* Md. Code Ann., Est. & Trusts § 2-208(e).  This general authority, however, does

14

not confer any specific responsibility for, or proximity to, Plaintiff's removal from the Estate or any related adverse action.  Because no exception to Eleventh Amendment immunity reaches Frosh and Griffin,[4] the claims as to them must be dismissed.

The Court next turns to Pendleton and Debelius' separate challenges.

### C.  Claims Barred as *Res Judicata*

Defendants Debelius and Pendleton urge dismissal of the Amended Complaint because all claims raised in this litigation "were or should have been raised" in the state cases.  *See* ECF No. 26-1 at 5 – 6, 28 – 29.  The Court construes the argument as one of claim preclusion—that because the claims were or could have been raised in the prior suits, Plaintiff is barred from raising them now.  Although res judicata is customarily an affirmative defense, the Court may reach the question on a motion to dismiss when the complaint and the prior state court docket make its application clear.  *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).  For the following reasons, res judicata squarely applies and demands dismissal of the claims against Pendleton and Debelius.

Res judicata prevents parties from "relitigating an identical issue with the same party or his privy" after having had a full and fair opportunity initially to press their claims.  *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 – 62 (4th Cir. 2008) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)).  Res judicata bars the later-filed action when (1) the parties or their privies in both suits are identical; (2) the claims in the new suit were or could have been brought in the original suit; and (3) the claims in the original suit reached a final judgment on the

---

[4] Griffin also enjoys "[a]bsolute quasi-judicial immunity" in his role as Register of Wills.  *See Kendrick v. Cavanaugh, et al.*, No. CCB-10-2207, 2011 WL 2837910, at *4 (D. Md. July 14, 2011) (extending immunity to Register of Wills for Baltimore County) (citing *Sindram v. Suda*, 986 F.2d 1459, 1461 (D.C. Cir. 1993)).

merits.  *See Laurel Sand & Gravel, Inc.*, 519 F.3d at 162.  When viewing the Complaint and the state court dockets most favorably to Plaintiff, res judicata clearly bars this suit.

First, this action involves the same parties as the underlying state court proceedings. Pendleton and Oxana were parties to the Circuit Court action which challenged the propriety of Pendleton's role as Special Administrator.  ECF Nos. 26-16, 26-18, & 26-3.  Debelius, as Pendleton's counsel, was in privity with Pendleton during the state court actions.  A non-party is considered in privity with a party to litigation when the non-party is so "identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved.'"  *Martin v. Am. Bancorporation Retirement Plan*, 407 F.3d 643, 651 (4th Cir. 2005) (quoting *Jones v. SEC*, 115 F.3d 1173, 1180 (4th Cir. 1997)).  Privity does not automatically exist "with respect to every attorney-client interaction" but attorneys may share privity with clients depending on the closeness of the relationship.  *Weinberger v. Tucker*, 510 F.3d 486, 492 – 93 (4th Cir. 2007).  Here, Debelius represented Pendleton in the mediation and later testified as a witness on behalf of the Estate as to the formation of the Agreement.  ECF No. 31-12 at 66 – 97.  Further, in the proceedings below, Plaintiff repeatedly raised that Debelius engaged in fraud and misrepresentation.  *See, e.g.*, ECF No. 26-18 at 21 – 23.  Thus, because Pendleton and Debelius share a close relationship and similar interests in representing the Estate, the first res judicata prong is satisfied.

Second, the Amended Complaint recycles the same basic claims pursued in the previous actions.  For res judicata purposes, the test is "whether the claim presented in the new litigation 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment.'"  *Laurel Sand & Gravel, Inc.*, 519 F.3d at 162 (quoting *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999)).  "[N]ewly articulated claims based on the same transactional

16

nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." *Id.* (citing *Tahoe Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003)).  In this action, Plaintiff finds fault with Pendleton as the Special Administrator and raises the same identical issues at the heart of the state court proceedings.  *Compare* ECF No. 12, *with* ECF No. 26-3.  Plaintiff accuses Pendleton and Debelius of the same fraud, misrepresentation, and self-dealing that she did in her petitions to remove the Circuit Court action to Baltimore City and set aside earlier judgments in the Probate action.  *See generally* ECF Nos. 26-18,  26-19, & 26-20; ECF No. 26-5 at 7 – 11.  Thus, Plaintiff's claims here were or could have been brought in the earlier suit.

Third, Plaintiff has litigated her claims to final judgment in the state courts many times over.  "The standard of finality for *res judicata* purposes is similar to the standard of finality for purposes of appeal." *Torkornoo v. Helwig*, No. TDC-15-2652, 2017 WL 4898260, at *2 (D. Md. Oct. 27, 2017) (citing *Cook v. State*, 281 Md. 665, 668 – 70 (1978)).  In the probate context, final judgments "of an Orphans' Court are those judgments, orders, decisions, etc. which, in caveat proceedings, finally determine the proper parties, the issues to be tried and the sending of those issues to a court of law." *See Schlossberg v. Schlossberg*, 275 Md. 600, 612 (1975) (defining "final judgment" for purposes of determining appellate jurisdiction).  Thus, an order appointing a special administrator is a final judgment. *See Carrick v. Henley*, 44 Md. App. 124, 129 – 30 (1979).  Likewise, the orders enforcing the settlement agreement are considered final. *See Jones v. Hubbard*, 356 Md. 513, 525 (1999).  Lastly, the Circuit Court decision rejecting Plaintiff's claims that implicated Debelius was clearly final, and it was affirmed by the Appellate Court.  In short, res judicata clearly bars all claims as to Pendleton and Debelius. The claims must be dismissed on this ground alone.

### D.  Claims Fail as a Matter of Law

Although the claims are barred by res judicata, Plaintiff's inherently litigious disposition prompts the Court to address briefly why even if the doctrine of res judicata did not apply, the Amended Complaint fails to state a legally cognizable claim.

### i.  Counts I – V

For Counts I through V, Plaintiff broadly alleges that "Defendants discriminated against her on the basis of race, ancestry or ethnic characteristics," all in violation of 42 U.S.C. §§ 1981, 1982, & 1983.  ECF No. 12 ¶ 261; *see also id.* ¶¶ 259, 265, 268, 284, 285, 288, 298, 299, 315, 350, 355.  Sections 1981 and 1982 prohibit discrimination against racial minorities with respect to contracts, including in the employment and retail contexts, and property.  *Baltimore-Clark v. Kinko's Inc.*, 270 F. Supp. 2d 695, 698 – 99 (D. Md. 2003) (describing Section 1981 claims); *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 422 – 24 (1968) (contextualizing Section 1982 in relation to the Thirteenth Amendment).  To proceed on either claim a plaintiff must plausibly aver her (1) status as a racial minority; (2) discriminatory intent by the defendant; and (3) that the discrimination related to an activity covered in the particular provision.  *Baltimore-Clark*, 270 F. Supp. 2d at 699; *Hayat v. Diaz*, No. 20-cv-02994-LKG, 2022 WL 252963, at *7 (D. Md. Jan. 27, 2022) (applying test to Section 1982 claims).  For each claim, the facts must also make plausible that "race was a but-for cause of the plaintiff's injury."  *See Gary v. Facebook, Inc.*, 822 F. App'x 175, 180 (4th Cir. 2020) (discussing Section 1981) (citing *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020)).

Despite the Amended Complaint's heft, no facts remotely make plausible either statutory violation.  Plaintiff avers solely (and repeatedly) that she is a "U.S. Citizen" who suffered generalized discrimination on account of her "race, ancestry, or ethnic characteristics."  *See* ECF

No. 12 ¶¶ 8, 108, 109, 110, 128, 129, 135, 259, 261, 265, 268, 269, 285, 298, 299, 315, 355, 376. But she avers no facts to even suggest she is a member of a protected race group or, more fundamentally, that either defendant engaged in any adverse conduct on account of her race. More to the point, no facts make plausible that Debelius and Pendleton were "solely motivated by racial animus." *Id.* ¶ 276.  The Amended Complaint's naked allegations of discrimination are fatal to Counts I & II.

Counts III through V, the Section 1983 claims, fail for a different but equally fatal reason. Section 1983 liability extends only to persons acting under color of law who, in that capacity, deprive an individual of the "rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983; *see also Philips*, 572 F.3d at 180.  Although Section 1983 liability may extend to private persons whose actions demonstrate a "sufficiently close nexus" with the state, *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003), no such close nexus exists here. Simply because Pendleton had been appointed as Special Administrator does "not vest state power in the appointee in such a way as to attribute that person's conduct to the state[.]"  *Conboy v. Norwest Bank Ind., N.A.*, No. 94-1851, 1994 WL 621605, at *1 (D. Md. July 13, 1994).  No alleged acts or omissions transform purely private conduct into state action sufficient to sustain a Section 1983 claim.  Thus, the Section 1983 claims as to Debelius and Pendleton must be dismissed.

Because Defendants Debelius and Pendleton could not conceivably have acted "under color of law," any further amendment of the Section 1983 claim would be futile.  *See Innocent v. Bank of N.Y. Mellon*, No. PWG-15-951, 2016 WL 386222, at *3 (D. Md. Feb. 2, 2016) (citing *Curry v. Farmer*, 2 F.3d 1149 (Table), 1993 WL 311947, at *1 n.* (4th Cir. 1993)).  Similarly, nothing in the five appellate decisions, dozens of court orders, and hundreds of related pleadings

and transcript pages, if added to a proposed second amended complaint, could make plausible that Plaintiff was the victim of but-for racial discrimination.  Accordingly, these claims are dismissed with prejudice.

### ii.  Count VI

For the defamation claim in Count VI, Plaintiff points to two statements that were made in the state litigation concerning some alleged "incestuous relationship."  ECF No. 12 ¶¶ 358, 359.  The first, uttered in 2018, is clearly time barred.  Indeed, Plaintiff concedes that suit must be brought within one year from the date the claim accrues.  *Id.* ¶ 357; *see also* Md. Code Ann., Cts. & Jud. Proc. § 5-105.  Thus, that allegation is dismissed on limitations grounds alone.

Plaintiff also appears to challenge an array of more recent statements.  As to those claims, the Court starts with the elements of common law defamation.  In Maryland, defamation occurs where "(1) the defendant made a defamatory statement to a third person (a requirement known as publication); (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff thereby suffered harm."  *Doe v. Johns Hopkins Health Sys. Corp.*, 274 F. Supp. 3d 355, 365 (D. Md. 2017) (citing *Gohari v. Darvish*, 363 Md. 42 (2001)).  Even if an offending statement meets the criteria for defamation, where the alleged defamatory statements are "words spoken or written in the course of a judicial proceeding," the declarant is shielded from liability "so long as the words are relevant to the proceeding."  *O'Brien & Gere Engineers, Inc. v. City of Salisbury*, 222 Md. App. 492, 508 (2015) (citing *Norman v. Borison*, 418 Md. 630, 650 (2011)).

Here, the Court seriously questions whether the offending statements are defamatory as a matter of law.  But even if they were, the underlying litigation as incorporated into the Amended

Complaint leaves no doubt that each of the alleged statements were also connected to the underlying judicial proceedings related to the Estate.

Plaintiff alleges that Pendleton and Debelius published accusations of an "incestuous sexual relationship with her former father-in-law" on January 11, 2022.  ECF No. 12 ¶ 358.  That was the same date on which Pendleton and Debelius filed their fourth petition for attorney's fees in the Probate action.  ECF No. 16-2 Dkt. No. 440.   Plaintiff also alleges that Pendleton and Debelius falsely referred to her as the "true surviving spouse" of the decedent, including in a "proposed order."  ECF No. 12 ¶¶ 126, 127, 360, 361.  Plaintiff alleges that Pendleton and Debelius falsely refer to Neela the true wife and legatee.  ECF No. 12 ¶¶ 136, 362.  In all events, these offending statements appear in state court filings concerning the Estate litigation.

Moreover, all allegedly offending statements are relevant to the Probate action. Determining the identity of the decedent's "true surviving spouse"  is a highly relevant inquiry because a surviving spouse may elect to take a statutory share of the Estate.  *See* Md. Code Ann., Est. & Trusts § 3-403.  Neela ultimately received a share of the Estate under the terms of the Agreement, ECF No. 26-10 at 1, and the Appellate Court affirmed the enforceability of that arrangement in *Parikh* I.  ECF No. 26-3 at 13 – 29.  Similarly, parsing Plaintiff's exact relationship to the decedent is essential to determining whether she is an "interested person" in the administration of the Estate.  Md. Code An.., Est. & Trusts § 101(i)(1).  To the extent Pendleton and Debelius have summarized or quoted offensive language throughout the state court proceedings, doing so was relevant to their requests made to the state courts for various forms of relief.

At bottom, the allegedly defamatory statements that Plaintiff highlights all revolve around the complicated web of relationships in the Parikh family and the lengthy litigation that

has plagued the administration of this Estate.  Further, because all allegedly defamatory statements concerning Plaintiff took place in connection with six years of underlying state court litigation, the Court cannot discern how Plaintiff could cure the pleading defects.  Thus, the defamation claims are dismissed with prejudice.

### iii.   Count VII

Last, the Court considers Plaintiff's fraudulent misrepresentation claim (Count VII).  To survive challenge, the Amended Complaint must make plausible that a defendant (1) made a false representation to the plaintiff, (2) with knowledge of its falsity or with reckless indifference as to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result.  *DiFranco v. Green Tomato, LLC*, No. 2305, 2018 WL 3202983, at *10 (Md. Ct. Spec. App. June 29, 2018).

Plaintiff cites a litany of purported statements made in connection with the underlying state litigation.  Putting to one side whether the challenged statements were false or fraudulent, no facts make plausible that *Plaintiff* relied on the misstatements to *her* detriment.  In fact, she contends quite the opposite—that she disputes now, as she did then, the veracity of the statements made to the Court and thus, never relied on them for anything.  *Compare* ECF No. 12 ¶¶ 111 – 24 (describing Pendleton's alleged misrepresentations as Special Administrator), *with* ECF No. 16-2 Dkt. Nos. 61 & 63 (immediately noticing appeal of Orphan's Court Order appointing Pendleton).  Because Plaintiff cannot make plausible any allegation of detrimental reliance, *DiFranco*, 2018 WL 3202983 at *10, the claim must be dismissed with prejudice.

22

## IV.     Sanctions

The Court finally turns to Defendants Debelius and Pendleton's separate Rule 11 motion for sanctions against Plaintiff.  ECF No. 32.  Given the tortured history of this litigation, Debelius and Pendleton understandably seek a prefiling injunction against Plaintiff as well as their attorneys' fees and costs in defending the matter.  ECF No. 32 at 11.  Defendants, as required by Rule 11, provided notice of intention to seek sanctions more than twenty-one days prior to filing the motion with the Court.  *See generally* ECF No. 32-1.  The question of sanctions, therefore, is properly before the Court.

Under Rule 11, federal courts retain authority to sanction litigants for filings made with an "improper purpose, such as harassment, delay, or coercion."  *Fastov v. Palisades Swimming Pool Assoc., Inc., et al.*, No. AW-05-1760, 2006 WL 4560161, at *7 (D. Md. Jan. 31, 2006) (citing Fed. R. Civ. P. 11).  Rule 11 expressly applies to pro se litigants, but the court must exercise "sufficient discretion to take account of the special circumstances that often arise in pro se situations."  Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment (citing *Haines v. Kerner*, 404 U.S. 519 (1972)).  "[U]se of such measures against a pro se plaintiff should be approached with particular caution and should remain very much the exception to the general rule of free access to the courts."  *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818 (4th Cir. 2004) (internal quotation marks and citations omitted).

Pre-filing injunctions are available to courts "where vexatious conduct hinders the court from fulfilling its constitutional duty."  *Whitehead v. Viacom*, 233 F. Supp. 2d 715, 726 (D. Md. 2002), *aff'd sub nom. Whitehead v. Viacom, Inc.*, 63 F. App'x. 175 (4th Cir. 2003); *Cromer*, 390 F.3d at 818 (noting that courts may limit a litigant's access as a sanction for "a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions.").  A pre-filing

injunction is valid so long as it does not "effectively deny access to the courts, and the district court must give the litigant notice and the opportunity to be heard prior to granting the injunction." *Whitehead*, 233 F. Supp. 2d at 726.

Courts consider four factors when weighing the propriety of a pre-filing injunction: "(1) the party's history of litigation, in particular whether [the party] has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions." *Cromer*, 390 F.3d at 818 (citing *Safir v. United States Lines, Inc.*, 729 F.2d 19, 24 (2d Cir. 1986)). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Safir*, 792 F.2d at 24; *see also Cromer*, 390 F.3d at 818. If the court determines a pre-filing injunction is the appropriate remedy, "the judge must ensure that the injunction is narrowly tailored to fit the specific circumstances at issue." *Cromer*, 390 F.3d at 818.

Here, each factor weighs in favor of imposing the requested injunction. First, although Plaintiff appears for her first time in federal court,[5] she has bombarded the state courts and Defendants with frivolous motions, petitions, and appeals for six years. *See generally* ECF No. 16-2. In two separate decisions, the Appellate Court has explained the propriety of sanctions to address Plaintiff's " vexatious litigation and meritless arguments," and "frivolous appeals" brought with "bad faith and lack of substantial justification." ECF No. 26-5 at 20; *see also* ECF No. 26-6 at 13 – 14. Yet undeterred, Plaintiff now turns her sights on this Court to resurrect the

---

[5] Namish, however, sued Frosh in connection with the Estate dispute, challenging the constitutionality of Maryland's prejudgment attachment procedure. *Parikh v. Frosh*, No. GJH-17-0332, ECF No. 1 (D. Md. filed Feb. 6, 2017). This challenge that was summarily rejected and affirmed on appeal. *See generally Parikh v. Frosh*, No. GJH-17-0332, 2017 WL 4124238 (D. Md. Sept. 15, 2017), *aff'd* 715 F. App'x 288 (Mem) (4th Cir. 2018).

same claims against the same defendants.  In short, Plaintiff's litigation history strongly supports the requested prefiling injunction.

Second, Plaintiff's pressing of the same arguments rejected time and again constitutes bad faith.  Whether it be to hurl unsupported invective at Pendleton and Debelius, *see, e.g.*, ECF No. 12 ¶¶ 66, 110, or maintain her right to contest the Estate, *id.* ¶¶ 103, 138, 164, 170, 205, 208, 209, 211, her arguments have all been raised and rejected time and again.  This factor, too, supports a pre-filing injunction.

Third, Plaintiff has been sanctioned in state court on more than one occasion, ECF Nos. 26-5 at 21, 26-6 at 14, & 26-7 at 9, and yet continues her buckshot approach to persist in her frivolous litigation.  For these reasons, nothing short of a pre-filing injunction will deter her from similar vexation litigation in the future.  Because a pre-filing injunction's aim is to eliminate only frivolous actions, Plaintiff will still have access to the courts, but as to future litigation concerning this matter, she will need advance leave of the Court before she may file suit. *Whitehead*, 233 F. Supp. 2d at 726; *see also Cromer*, 390 F.3d at 817.

Pendleton and Debelius also seek attorneys' fees.  Although the Court sympathizes with the time and expense that Plaintiff's seriatim litigation has cost Defendants, the Court will not impose monetary sanctions at this juncture.  Rule 11 is not a fee-shifting provision. *See In re Kunstler*, 914 F.2d 505, 522 (4th Cir. 1990) (Rule 11 sanctions "should not blindly be used to shift fees.").  Nor have similar sanctions, imposed in the Circuit Court action, worked to chill Plaintiff's vexatious approach to litigation.  In the Court's view, the prefiling injunction most effectively addresses Plaintiff's abuse of process and best deters future misconduct. *See id.* at 523 (4th Cir. 1990) ("[I]t is clear that the primary, or 'first' purpose of Rule 11 is to deter future litigation abuse.").  Nevertheless, the Court warns Plaintiff that should she continue to clog the

docket with additional baseless pleadings, the Court will not hesitate to revisit the requested monetary sanctions.

## V.     Conclusion

For the foregoing reasons, the Court DISMISSES the Amended Complaint (ECF No. 12); GRANTS the motions to dismiss (ECF Nos. 16 & 26); and GRANTS in part the motion for sanctions (ECF No. 32).  A separate Order follows.


January 9, 2023                                              /s/
Date                                                    Paula Xinis
                                                        United States District Judge